UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEPHANIE SETTLES,

    Plaintiff,

        v.                                                                                  Civil Action No. 13-1868 (DAR)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
Administration,

    Defendant.

## MEMORANDUM OPINION

This case was referred to the undersigned for all purposes. *See* Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Document No. 22). Currently pending and ready for resolution are (1) Plaintiff's Motion for Judgment of Reversal ("Plaintiff's Motion") (Document No. 14) and (2) Motion for Judgment of Affirmance and in Opposition to Motion for Judgment of Reversal ("Defendant's Motion") (Document No. 15). Upon consideration of the motions, the memoranda in support thereof and in opposition thereto, and the entire record herein, Plaintiff's motion will be granted in part and Defendant's motion will be denied.

**BACKGROUND**

Plaintiff Stephanie Settles brings this action seeking judicial review of a final decision by Defendant Commissioner of the Social Security Administration, pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* ("SSA"). *Id.* ¶¶ 2-4.

*Procedural History*

On December 19, 1988, Plaintiff first applied for supplemental security income ("SSI"). Administrative Record ("AR")[1] at 493. On February 2, 1989, her application was granted. *Id.* On March 30, 2001, she was incarcerated for a one-year period, resulting in the automatic loss of her benefits. *Id.*

On December 31, 2002, Plaintiff again applied for SSI. Id. On May 11, 2003, her claim was denied. *Id.* She sought reconsideration of that decision but that request was denied on November 10, 2003. *Id.*

In 2004 and 2008, Plaintiff again applied for SSI, and those claims were similarly denied. *Id.* On May 21, 2010, she applied yet again for SSI, and on January 7, 2011, her claim was denied yet again. *Id.* On March 15, 2011, she filed for reconsideration. *Id.* at 86. On June 8, 2011, her claim for reconsideration was denied. *Id.* at 493.

On August 2, 2011, Plaintiff filed a written request for a hearing. *Id.* at 22. That hearing was held on August 22, 2012. *Id.* On September 4, 2012, Administrative Law Judge ("ALJ") issued his determination, finding that Plaintiff was not disabled. *Id.* at 31. On September 24, 2013, the Commissioner denied the plaintiff's request for a review of the ALJ's September 4, 2012 decision. *Id.* at 1-4.

### *Summary of the ALJ's Ruling*

On September 4, 2012, the ALJ issued a written opinion, wherein he ultimately concluded that Plaintiff (referred to by the ALJ as the claimant) was "not disabled under section 1614(a)(3)(A) of the Social Security Act." AR at 23-32. Specifically, the ALJ made the following ten summary findings:

---

[1] The Administrative Record appears on the docket beginning at (Document No. 17-2). It replaces the Administrative Record filed at (Document No. 11).

1. The claimant has not engaged in substantial gainful activity since May 21, 2010, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: mild right-sided weakness as a result of alleged remote traumatic brain injury, depression, rule out posttraumatic stress disorder, and cocaine dependence in reported remission (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except that work must be unskilled, allow her to alternate between sitting and standing at will, and require limited general public contact.

5. The claimant has no past relevant work (20 C.F.R. § 416.965).

6. The claimant was born on September 30, 1966 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. § 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. § 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § 416.969 and 416.969(a)).

>	10.	The claimant has not been under a disability, as defined in the Social Security Act, since May 21, 2010, the date the application was filed (20 C.F.R. § 416.920(g)).

AR at 25-32.

## CONTENTIONS OF THE PARTIES

Plaintiff contends that the ALJ's decision should be reversed, and that the matter should be (1) remanded for the award of Social Security insurance benefits and SSI or (2) remanded for further proceedings. *See* Plaintiff's Motion (Document No. 14) at 2.

Plaintiff argues that the ALJ did not adhere to the "treating physician rule" as followed by this jurisdiction, failing to give the proper controlling weight to the opinion Plaintiff's treating physician, Dr. Britt. Plaintiff's Memorandum in Support of Motion for Judgment of Reversal ("Plaintiff's Memorandum") (Document No. 14) at 11-16. Plaintiff avers that Dr. Britt's opinion was sufficient to find Plaintiff disabled within contemplation of 20 C.F.R. § 404. *Id.* at 12. Moreover, Plaintiff argues that these findings are wholly supported by the record and additional medical opinions. *Id.* at 12-16. Therefore, Dr. Britt's opinion should have received controlling weight under these circumstances, and any further inquiry into Plaintiff's status, without such deference, is inherently erroneous. *Id.* at 16-17. Plaintiff concludes that "the record supports only a finding that Ms. Settles would not be able to find a job that exists in the economy." *Id.* at 17.

Plaintiff also alleges that she suffers from mental retardation (as well as other ailments) as a result of a brain injury that she sustained in 1988. *See* AR at 505. Plaintiff contends that the ALJ erred in his assessment of her mental retardation, particularly evidenced by his rejection the 2003 evaluation administered by Dr. Neil Schiff. *See* Plaintiff's Reply to Defendant's Motion

for Affirmance and in Opposition to Plaintiff's Motion for Judgment of Reversal ("Plaintiff's Reply") (Document No. 19) at 5-6; *see also* AR 546-49. In relevant part, Plaintiff states

> The ALJ points to no evidence that the WAIS-III's reliability is affected by time. And he ALJ cites to no contradictory evidence. The ALJ also ignores more recent corroborating tests in the record, providing objective evidence that Ms. Settles reading, math, and language ability was no greater than a third grade level. Even if the ALJ questioned the severity of Ms. Settles' mental retardation as he does her other impairments, he is required acknowledge and consider all of the evidence in the record. There is no contradictory evidence. The uncontradicted evidence of her mental retardation fully satisfies the criteria set forth in 20 C.F.R. § 404, Subpart P, Appendix 1.

Plaintiff's Reply at 6 (citations and footnotes omitted). Plaintiff then counters the ALJ's assertion that Dr. Schiff's report was somehow inaccurate due to her cocaine use by contending that the ALJ made his assertion without providing evidence "that the medical professionals would be unable to distinguish between mental illness and retardation and the symptoms of drug abuse" or "that she was using cocaine at that time." Id. at 16-17. Plaintiff concludes that any such assertion is the product of speculation. *Id.* at 17.

Defendant avers that the ALJ did not err in his analysis of Dr. Britt's opinion. Defendant argues that the ALJ's decision to give Dr. Britt's opinion "little" weight was justified, given that the opinion was contradicted by substantial evidence from the record. Defendant's Memorandum of Law in Support of Defendant's Motion for Judgment of Affirmance and in Opposition to Motion for Judgment of Reversal ("Defendant's Memorandum") (Document No. 15-1) at 8-10. In support of this assertion, Defendant notes the appearance of several inconsistencies within Dr. Britt's assessments and ultimate conclusions. *Id.* Moreover, Defendant argues that Dr. Britt's opinion, even taken at "face value" is not indicative of disabling mental impairments within contemplation of the applicable authorities. *Id.* at 14.

Ultimately, Defendant contends that the totality of the record and issues of Plaintiff's own credibility, all properly assessed by the ALJ, justify the ALJ's departure from Dr. Britt's opinion. *Id.* at 17-26. Thus, further inquiry into the Plaintiff's status was not inherently erroneous as Plaintiff suggested. *Id.* at 28.

Defendant also contends that the ALJ properly dismissed Plaintiff's assertions with regard to her mental retardation. More specifically, Defendant states, "(1) the ALJ properly rejected Dr. Schiff's remote 2003 report on which Plaintiff relies; and (2) Plaintiff cannot show that she had the required deficits in adaptive functioning during the developmental period." *See* Defendant's Reply to Plaintiff's Reply for Judgment of Affirmance and in Opposition to Plaintiff's Motion for Judgment of Reversal ("Defendant's Reply") (Document No. 21) at 4-5. With regard to Defendant's first assertion, Defendant presents the ALJ's observation that Dr. Schiff's 2003 report is temporally attenuated and tainted due to Plaintiff's alleged drug use during that relevant period. *Id.* Moreover, Defendant avers that "the record supports that Plaintiff engaged in rampant drug abuse, including non-compliance with drug treatment and multiple arrests, since her teenage years (a time period that includes Dr. Schiff's 2003 examination)[,]" *id.* at 5 (citations omitted), and therefore, the ALJ's findings are not based on speculation. With regard to Defendant's second assertion, Defendant notes that Plaintiff's proffers support the notion "that any alleged deficits occurred after the developmental period," in contravention of the listing requirements for mental retardation. *See id.* at 5; *see also* 20 C.F.R. § 404, Subpart P, Appendix I, Listing 12.05. Therefore, according to Defendant, Plaintiff would be unable to meet her burden with regard to the applicable authorities. Defendant's Reply (Document No. 21) at 5-6

**STATUTORY FRAMEWORK**

The Social Security Act established a framework to provide "disability insurance benefits" to eligible individuals and "to provide supplemental security income to individuals who have attained age 65 or are blind or disabled." 42 U.S.C. §§ 423, 1381, 1381a. The statute defines disability for non-blind individuals as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" § 423(d)(1)(A); 20 C.F.R. § 416.905. A disabled individual is eligible for supplemental security income if he or she meets additional statutory requirements concerning "income" and "resources." 42 U.S.C. § 1382(a). The Social Security Administration has promulgated regulations, pursuant to the statue, outlining a five-step process for evaluating disability of adults. *See* 20 C.F.R. §§ 404.1520, 416.920.

First, the agency evaluates whether the claimant is "doing substantial gainful activity"; if so, the agency concludes that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), (b); 416.920(a)(4)(I), (b). If not, the agency determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . . ." §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." §§ 404.1520(c); 416.920(c). If deemed severe, the agency then determines whether the impairment "meets or equals one of [the] listings"; if so, and it meets the duration requirement, the agency concludes that the claimant is disabled. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d). The "listings" refers to a "listing of impairments" which "describes for each of the major body systems impairments that [the agency] consider to be severe enough to prevent an

individual from doing any gainful activity, regardless of his or her age, education, or work experience." § 404.1525(a).

Next, the agency assesses the claimant's "residual functional capacity and . . . past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f). Residual functional capacity is "the most [an individual] can still do despite" "physical and mental limitations," from all medically determinable impairments, "that affect what [he or she] can do in a work setting." § 404.1545. If the claimant has the residual functional capacity to perform his or her "past relevant work," the claimant is deemed not disabled. § 404.1560(b)(3). Otherwise, the agency assesses the claimant's "residual functional capacity and . . . age, education, and work experience to see if [he or she] can make an adjustment to other work." §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g). If the claimant can adjust to other work that "exist[s] in significant numbers in the national economy," the agency determines that the individual is not disabled. § 404.1560(c). However, if the claimant cannot make such an adjustment, the agency finds that the individual is disabled. §§ 404.1520(g)(1), 416.920(g)(1).

**APPLICABLE STANDARD**

Claimants may seek judicial review in a United States District Court of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . ." 42 U.S.C. § 405(g). "The Commissioner's ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards." *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citations omitted). "In other words '[a] district court's review of the [Social Security Administration's] findings of fact is limited to whether those findings are supported by substantial evidence.'" *Little v. Colvin*, 997 F. Supp. 2d 45, 49 (D.D.C. 2013) (citations omitted). "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Butler*, 353 F.3d at 999 (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "The test requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Id.* (citation omitted) (internal quotation marks omitted).

The United States Court of Appeals for the District of Columbia Circuit has observed that "[s]ubstantial-evidence review is highly deferential to the agency fact-finder," *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008), and that "a reviewing judge must uphold the ALJ's legal 'determination if it . . . is not tainted by an error of law,'" *Isaraphanich v. Comm'r of Soc. Sec. Admin.*, No. 12-0700, 2013 WL 3168141, at *3 (D.D.C. June 21, 2013) (citations omitted); *see also Nicholson v. Soc. Sec. Admin.*, 895 F. Supp. 2d 101, 103 (D.D.C. 2012) (citation omitted) (internal quotation marks and alteration omitted) (noting that the inquiry upon judicial review "examines whether the ALJ has analyzed all evidence and has sufficiently explained the weight he had given to obviously probative exhibits"); *Little*, 997 F. Supp. 2d at 49 (citations omitted) (noting that the court "is not to review the case 'de novo' or reweigh the evidence"). "The plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012) (citation omitted); *see also Garnes v. Colvin*, No. 12-1090, 2013 WL 5297221, at *4 (D.D.C. Aug. 27, 2013).

**DISCUSSION**

*Treating Physician*

This Court applies the "treating physician rule." In *Espinosa v. Colvin*, 953 F. Supp. 2d 25 (D.D.C. 2013), the district court held that "a treating physician's report is binding on the fact-finder unless contradicted by substantial evidence." 953 F. Supp. 2d at 32 (citing *Butler*, 353 F.

3d 992, 1003 (D.C. Cir. 2004)); *see also* 20 C.F.R. § 404.1527 (c)(2) (stating that when "a treating [physician]'s opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [plaintiff's] case record, [SSA] will give it controlling weight") (citations omitted). "If an ALJ rejects a treating physician's opinion, the ALJ bears the burden of explaining why he has rejected the treating physician's opinion and how the doctor's assessment is contradicted by substantial evidence." *Espinosa*, 953 F. Supp. 2d at 32 (citations omitted). Moreover, with regard to an ALJ's reasoning "the Court may only consider the grounds proffered by the agency in its decision for *post hoc* rationalizations do not suffice." *Id.* at 33; *see also Simpson v. Colvin*, No. 14-762, 2015 WL 4735523, at *6 (D.D.C. Aug. 10, 2015) (remanding case in part for use of *post hoc* rationalizations); *see also Clark v. Astrue*, 826 F. Supp. 2d 13, 20 (D.D.C. 2011) (holding that *post hoc* rationalizations are not to be considered by the reviewing court).

Dr. Alice Britt, Plaintiff's treating physician, treated Plaintiff over the course of several months in 2010. *See* AR 405-451. During that treatment period, Dr. Britt diagnosed Plaintiff with (1) "Major Depressive Disorder"; (2) "R/O PTSD"; and (3) "Cocaine Dependence (in remission since 6/16/03." *See* AR at 412. In addition to noting several of Plaintiff's issues regarding concentration, forgetfulness, and paranoia, Dr. Britt also concluded that the totality of Plaintiff's impairments would ultimately preclude her from working for more than 12 months. *Id.* at 413.

In the single sentence reflecting his reasoning, the ALJ notes his departure from Dr. Britt's medical opinion, stating that he gave the opinion "little weight due to the brief nature of their treating relationship, as well as the fact that Dr. Britt's objective findings on assessment and in treatment were largely normal and actually showed improvement." *Id.* at 27. The Court finds

explanation to be wholly insufficient. Here, in rejecting the medical opinion of Plaintiff's treating physician, the ALJ had "the burden of explaining why he has rejected the treating physician's opinion and how the doctor's assessment is contradicted by substantial evidence." *Espinosa*, 953 F. Supp. 2d at 32 (citations omitted). That single sentence, while offering some explanation, ultimately falls short of that burden. The ALJ's sweeping statement with regard Dr. Britt's opinion lacks the necessary specificity as to which of her findings that could be characterized as "normal" and "actually showing improvement." Moreover, that statement does not adequately explain why greater weight was afforded to the medical opinions of two consulting physicians, Dr. Elliot Aleskow and Dr. Spencer Cooper, who also examined Plaintiff. The ALJ's opinion leaves too much to interpretation. Defendant, through her written submissions, attempts to explain the ALJ's reasoning, however, as previously stated, *post hoc* rationalizations are impermissible as the Court can only consider the grounds actually proffered by the ALJ. *See* Defendant's Memorandum (Document No. 15-1) at 8-20. Here, Defendant's arguments can only be characterized as such and, therefore, cannot be entertained.

*Mental Retardation*

"[A]n ALJ's refusal to order a consultative exam is reversible error, in the event that the medical sources in the record do not provide sufficient information about whether or not a claimant is disabled." *See Meriwether v. Astrue*, No. 12-67, 2014 WL 8850108, at *11 (D.D.C. November 24, 2014) (citing *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). "The regulations state that there is a need for a consultative exam in the event that the medical evidence regarding a claimant's impairment(s) is insufficient." *Id.*; *see also* 20 C.F.R. § 416.917.

As previously stated, Dr. Neil Schiff conducted a consultative examination of Plaintiff in 2003, as she sought to have her Social Security benefits reinstated shortly after her incarceration.

AR 546-49.  After administering the Weschler Adult Intelligence Scale (III) and the Weschler Memory Scale (III), Dr. Schiff found that Plaintiff had a full scale IQ of 63 and that Plaintiff suffered from "mild mental retardation," among other ailments.  *Id.*  These scores placed Plaintiff in the "[e]xtremely low range of overall intellectual functioning."  *Id.* at 549.

With regard to Plaintiff's alleged injury that ultimately led to her mental retardation, the ALJ stated that "there is no medical documentation of the injury or alleged resulting impairments."  *See* AR at 24.  Moreover, in rejecting Dr. Schiff's evaluation, the ALJ stated that the report was unreliable "due to the large amount of time that has elapsed since it was completed; due to the fact that [Plaintiff] was a daily user of cocaine at the time, per subsequent records; and due to the fact that examiner's diagnosis was based solely on claimant's self-report of head injury.  *Id.* 24-25.  Here, the ALJ's assessment ultimately falls short.  While the Court is inclined to agree that Dr. Schiff's 2003 evaluation is indeed dated, nevertheless, the ALJ provides no indication as to whether one of the more recent evaluations contained in Plaintiff's medical records addresses the issue of her mental retardation.  These circumstances present a scenario in which the ALJ was duty bound to either (1) request a consultative evaluation to address Plaintiff's present issues, if any, regarding mental retardation; or (2) adequately explain that the recent evaluations in Plaintiff's medical records observed the same subject matter presented Dr. Schiff's report, and now contradict that earlier assessment.  Here, the ALJ did in fact obtain several consultative evaluations Plaintiff's behalf, however it remains unclear as to whether those reports address the issue of mental retardation in a manner comparable to Dr. Schiff's 2003 evaluation.  Based on the information provided Plaintiff's "medical sources in the record do not provide sufficient information" with regard to her mental retardation.  *Meriwether*, 2014 WL 8850108, at *11.  The interests of justice require a recent inquiry into Plaintiff's

assertions regarding her mental retardation.  The Court is, therefore, unable to complete its review of this matter, in accordance with the applicable authorities, without such an inquiry.  Defendant attempts to explain The ALJ's reasoning in with regard to Plaintiff's mental retardation, however, once again the Court finds that a substantial portion of this explanation consists of impermissible *post hoc* rationalizations that were not actually proffered by the ALJ.  *See* Defendant's Reply (Document No. 21) at 4-5.

**CONCLUSION**

For the reasons set forth herein, Plaintiff's Motion for Judgment of Reversal (Document No. 14) will be granted in part, Defendant's Motion for Judgment of Affirmance (Document No. 15) will be denied, and this case will be remanded this to the Social Security Administration for further proceedings consistent with this Memorandum Opinion, by order filed contemporaneously herewith.  In all other aspects, Plaintiff's Motion is denied.


Date: August 17, 2015                                    /s/
                                                         DEBORAH A. ROBINSON
                                                         United States Magistrate Judge